In the Matter of Melvin Dean
HILLYARD, Jr., and Betty
Jo Hillyard, Debtors.

SUR–GRO PLANT FOOD COMPANY,
INC., Plaintiff,

v.

Arthur B. FEDERMAN, Trustee, and
Citizens Bank of Blythedale,
Defendants.

Bankruptcy No. 83–03262–SJ.
Adv. No. 84–0178–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Nov. 30, 1984.

James H. Thompson, Jr., Kansas City, Mo., for plaintiff.

Arthur B. Federman, Linde, Thomson, Fairchild, Langworthy, Kohn and Van

Dyke, Kansas City, Mo., Robert B. Miner and William E. Mowery, Watkins, Bouwlare, Lucas and Miner, St. Joseph, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT IN FAVOR OF CITIZENS BANK OF BLYTHEDALE

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the plaintiff requests that the bankruptcy court make a determination that it has a valid, perfected, and prior security interest in some $19,222.84 which constitute the proceeds of the trustee's sale of certain cattle on or about January 9, 1984. In its answer to the plaintiff's complaint, the Citizens State Bank of Blythedale contends that its security interest in the cattle which were sold is prior to that of the plaintiff. To its answer, it attaches copies of documents purporting to show the following:

1. The execution of a note on January 6, 1983, by the debtor to Citizens Bank of Blythedale in the principal sum of $18,000.00.

2. A security agreement was executed on the same date, under the terms of which the Citizens Bank of Blythedale purported to take a security interest in "37 cows, 1 bull, 10 Holstein, 34 ewes and 1 buck."

3. Another note was executed by debtor in favor of the Citizens Bank of Blythedale on October 27, 1983, in the principal sum of $10,313.87.

4. Also on October 27, 1983, another security agreement was executed granting the Citizens Bank of Blythedale a security interest in "26 stock cows, 20 stock calves, 16 Holstein cows, 11 Holstein calves."

5. The Citizens Bank of Blythedale filed a financint statement on February 10, 1981, in the office of the Harrison County recorder, purporting to perfect a security interest in "livestock and machinery."

█ The defendant trustee in bankruptcy did not file an answer to the complaint and apparently has the status of only a disinterested stakeholder in this action.[1]

On the issues thus joined by the pleadings, the court set a hearing for August 31, 1984, in St. Joseph, Missouri. At that time, the parties appeared by counsel and agreed to submit this action for decision on the basis of written stipulation of facts, which has since been filed. A copy of that stipulation is attached hereto and is incorporated herein by reference as this court's findings of fact within the meaning of Rule 7052 of the Rules of Bankruptcy Procedure. Briefly, in addition to the facts summarized above from the answer of the Citizens Bank of Blythedale, the stipulated facts show that the plaintiff advanced $6,823.47 to the debtor on April 21, 1983, taking a security interest in livestock and machinery and the proceeds thereof and filing a financing state in Harrison County on April 25, 1983.

█ The facts thus stipulated demonstrate that the security interest of the Citizens State Bank of Blythedale attached and was perfected before the security interest of Sur-Gro Plant Food Company, Inc., was perfected. It is therefore the prior security interest. See § 400.9–312 RSMo.[2] Sur-Gro admits this, but notes that the livestock have now been sold; that it is only the proceeds of that sale which now are in the hands of the trustee; and that, in its

---

1. It is alleged in the within complaint that the check in the sum of $19,222.84 was made payable to "the names of all the aforementioned defendants as payees." Accordingly, because the monies are in the actual or constructive possession of the bankruptcy court, that court properly has jurisdiction.

2. Subsection (5) of that section pertinently provides that: "In all cases not governed by other rules stated in this section ... priority between conflicting security interests in the same collateral shall be determined as follows: (a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under section 400.9–204(1) and whether it attached before or after filing ..."

financing statement, it checked the "proceeds" box while the Citizens State Bank of Blythedale did not check the "proceeds" box on its financing statement. This argument, however, ignores the controlling fact that, as to property taken into custody by a trustee in bankruptcy, the rights of the parties are to be considered as of the date of bankruptcy.[3] As of that date, it is admitted that the livestock in which the Citizens State Bank and Sur-Gro existed *in specie* and had not been reduced to proceeds. In its brief, Sur-Gro further admits that the livestock sold by the trustee were those "which served as the collateral for the loans of the Bank and Sur-Gro." The court must find and conclude that the proceeds belong to the Citizens State Bank of Blythedale.[4]

It is therefore

ORDERED, ADJUDGED AND DECREED that the proceeds in custody of the trustee plus any actually earned interest be turned over to the Citizens Bank of Blythedale.

---

3. The cattle were taken into the actual custody of the bankruptcy estate *in specie.* By virtue of the provisions of section 541 of the Bankruptcy Code, the rights of the parties in that collateral were determined as of that time. Accordingly, this court is obliged to determine the rights of the parties in the cattle, as opposed to the proceeds. This is not a case in which the proceeds were *acquired* after the date of bankruptcy within the meaning of section 541(a)(6) of the Bankruptcy Code, with respect to which a security interest in "proceeds" would survive the date of bankruptcy, but one in the collateral would not. See section 552 of the Bankruptcy Code. Further, even without the intervention of bankruptcy, the stipulated facts are sufficient to demonstrate that the bank consented to sale of the cattle without waiving any right to the proceeds. See note 4, *infra.*

4. Sur-Gro contends that the bank waived its security interest by consenting to the sale by the trustee, see note 3, *supra,* and also by permitting the debtor, in the past, to sell cattle and to pay the proceeds to the bank. It is true that, in *Charterbank Butler v. Central Cooperatives,* 667 S.W.2d 463, 465 (Mo.App.1984), the Missouri Court of Appeals held that, when express or implied actions of the secured party "clearly demonstrate authorization to sell the collateral," such authorization "destroy(s) any lien interest in the collateral and any support for an action in conversion." It was further held that "(consent), though conditioned upon payment of the proceeds to the mortgagee, cuts off the lien." *Id.* at 466. See also *Pieper v. First National Bank of Linn Creek, Camdenton,* 453 S.W.2d 926, 930 (Mo.1970) ("If the sale of goods is authorized by the secured party the buyer always takes clear of a security interest in the goods and no ques-

tion arises to which Code section 9–307 would apply."). See also *Farm Bureau Co-Op Mill & Supply v. Blue Star Foods,* 238 F.2d 326, 332 (8th Cir.1956), to the effect that "the mortgagee consented to the sale of the mortgaged property, thus waiving its mortgage lien, and for that reason neither it nor its assignee could maintain an action for its conversion." These decisions make it clear, however, that the rule to this effect is invoked in favor of the buyer of the goods and that the mortgage or lien remains enforceable against the debtor or mortgagee for other property which may not be sold by means of the authorization. See, e.g., *Pieper v. First National Bank of Linn Creek, Camdenton, supra,* to the effect cited. See also *Farm Bureau Co-op Mill and Supply v. Blue Star Foods, supra,* at 332 to the following effect: "(T)he failure of the mortgagor to pay over the proceeds of the sale to the mortgagee for credit upon the mortgage debt did not prevent an effective release of the lien of the mortgage *as against a third person who was not a party to and did not have knowledge of that understanding.*" (Emphasis added.) And, further, it is said in that case that "where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property, the mortgage lien *thereon* is discharged." (Emphasis added.) It is clear from these authorities that Sur-Gro cannot be regarded as being in the position of a buyer of collateral according to authorization of the previous secured party when there is no evidence that the bank consented to the giving of the security interest to Sur-Gro in such a fashion that it would supersede its own. Further, with respect to the property here in question, the consent to sale was only at the hands of the trustee in bankruptcy after the character of the property had been determined as of the date of bankruptcy.